# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

FRED BROWN PEARSON,

              Petitioner,

   v.

SULLIVAN, Warden,

              Respondent.

_____/

CV F   04-5258 REC DLB HC

FINDINGS AND RECOMMENDATIONS
REGARDING PETITION FOR WRIT OF
HABEAS CORPUS

[Doc. 1]

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus
pursuant to 28 U.S.C. § 2254.

## PROCEDURAL BACKGROUND[1]

On November 8, 2001, Petitioner was convicted in the Kern County Superior Court of
making criminal threats in violation of California Penal Code section 422.  In a separate
proceeding, the trial court found true a prior prison term enhancement, pursuant to California
Penal Code section 667.5, subdivision (c).  Petitioner was sentenced to an aggregate term of four
years and eight months in state prison.

Petitioner filed a timely notice of appeal with the California Court of Appeal, Fifth
Appellate District.  On January 22, 2003, the Fifth District Court of Appeal affirmed the
conviction and sentence.  (Respondent's Exhibit B, attached to Answer.)

///

---

[1] This information is derived from the petition for writ of habeas corpus and Respondent's answer.

1

1   On March 27, 2003, Petitioner filed a petition for review with the California Supreme

2   Court.  On November 19, 2003, the Supreme Court denied the petition.  (Respondent's Exhibit

3   D, attached to Answer.)

4   Petitioner filed the instant petition for writ of habeas corpus on February 9, 2004.  By

5   order of March 17, 2004, the Court directed Respondent to file a response to the petition.

6   Respondent filed an answer on June 14, 2004.  Petitioner did not file a traverse.[2]

7   STATEMENT OF FACTS

8   Petitioner made a series of telephone calls to his ex-wife, Sally Pearson, and her

9   boyfriend, James Galagan, during the period of late July to August 15, 2001.  (RT 84-85.)

10   At trial, both Sally Pearson and James Galagan testified that Petitioner threatened them

11   with great bodily injury and death.  (RT 32-37, 56-60.)

12   The parties stipulated to the introduction of the "trap and trace" evidence in the form of

13   incoming phone calls placed upon the telephone line of Ms. Pearson.  (CT 43; RT 121.)

14   Petitioner admitted to making the telephone calls, but denied ever threatening Ms.

15   Pearson or Mr. Galagan or telling anyone that he intended to harm Ms. Pearson.  (RT 90-96,

16   106.)

17   In rebuttal, the prosecution witness, Sue Nichols, testified that Petitioner told her he was

18   going to kill Ms. Pearson.  (RT 114-115.)

19   DISCUSSION

20   A.   Jurisdiction

21   Relief by way of a petition for writ of habeas corpus extends to a person in custody

22   pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws

23   or treaties of the United States.  28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor,

24   529 U.S. 362, 375, 120 S.Ct. 1495, 1504, n.7 (2000).  Petitioner asserts that he suffered

25   violations of his rights as guaranteed by the U.S. Constitution.  The challenged conviction arises

26   ///

27

28   [2] The Court's March 17, 2004, order directed that any traverse was due within thirty days from the date
Respondent's answer was filed.  (Court Doc. 5.)

1   out of the Kern County Superior Court, which is located within the jurisdiction of this Court.  28

2   U.S.C. § 2254(a); 2241(d).

3        On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act

4   of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its

5   enactment.  Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059, 2063 (1997), cert. denied, 522 U.S.

6   1008, 118 S.Ct. 586 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997) (quoting

7   Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir.1996), cert. denied, 520 U.S. 1107, 117 S.Ct.

8   1114 (1997), overruled on other grounds by Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059

9   (1997) (holding AEDPA only applicable to cases filed after statute's enactment).  The instant

10  petition was filed after the enactment of the AEDPA and is therefore governed by its provisions.

11  B.    Standard of Review

12       This Court may entertain a petition for writ of habeas corpus "in behalf of a person in

13  custody pursuant to the judgment of a State court only on the ground that he is in custody in

14  violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).

15       The AEDPA altered the standard of review that a federal habeas court must apply with

16  respect to a state prisoner's claim that was adjudicated on the merits in state court. Williams v.

17  Taylor, 120 S.Ct. 1495, 1518-23 (2000).  Under the AEDPA, an application for habeas corpus

18  will not be granted unless the adjudication of the claim "resulted in a decision that was contrary

19  to, or involved an unreasonable application of, clearly established Federal law, as determined by

20  the Supreme Court of the United States;" or "resulted in a decision that was based on an

21  unreasonable determination of the facts in light of the evidence presented in the State Court

22  proceeding." 28 U.S.C. § 2254(d); Lockyer v. Andrade,123 S.Ct.1166 (2003) (disapproving of

23  the Ninth Circuit's approach in Van Tran v. Lindsey, 212 F.3d 1143 (9th Cir. 2000)); Williams v.

24  Taylor, 120 S.Ct. 1495, 1523 (2000).  "A federal habeas court may not issue the writ simply

25  because that court concludes in its independent judgment that the relevant state-court decision

26  applied clearly established federal law erroneously or incorrectly."  Lockyer, at 1175 (citations

27  omitted).  "Rather, that application must be objectively unreasonable." Id. (citations omitted).

28  ///

1  While habeas corpus relief is an important instrument to assure that individuals are

2 constitutionally protected, Barefoot v. Estelle, 463 U.S. 880, 887, 103 S.Ct. 3383, 3391-3392

3 (1983); Harris v. Nelson, 394 U.S. 286, 290, 89 S.Ct. 1082, 1086 (1969), direct review of a

4 criminal conviction is the primary method for a petitioner to challenge that conviction.  Brecht v.

5 Abrahamson, 507 U.S. 619, 633, 113 S.Ct. 1710, 1719 (1993).  In addition, the state court's

6 factual determinations must be presumed correct, and the federal court must accept all factual

7 findings made by the state court unless the petitioner can rebut "the presumption of correctness

8 by clear and convincing evidence."  28 U.S.C. § 2254(e)(1); Purkett v. Elem, 514 U.S. 765, 115

9 S.Ct. 1769 (1995); Thompson v. Keohane, 516 U.S. 99, 116 S.Ct. 457 (1995); Langford v. Day,

10 110 F.3d 1380, 1388 (9th Cir. 1997).

11 C.    Ineffective Assistance of Counsel

12  Petitioner contends that his trial counsel was ineffective for failing to object to and,

13 instead, entering into a stipulation regarding "trap and trace"[3] evidence of telephone calls made to

14 Ms. Pearson's home.

15  The law governing ineffective assistance of counsel claims is clearly established for the

16 purposes of the AEDPA deference standard set forth in 28 U.S.C. § 2254(d).  Canales v. Roe,

17 151 F.3d 1226, 1229 (9th Cir. 1998.)  In a petition for writ of habeas corpus alleging ineffective

18 assistance of counsel, the court must consider two factors.  Strickland v. Washington, 466 U.S.

19 668, 687, 104 S.Ct. 2052, 2064 (1984); Lowry v. Lewis, 21 F.3d 344, 346 (9th Cir. 1994).  First,

20 the petitioner must show that counsel's performance was deficient, requiring a showing that

21 counsel made errors so serious that he or she was not functioning as the "counsel" guaranteed by

22 the Sixth Amendment. Strickland, 466 U.S. at 687.  The petitioner must show that counsel's

23 representation fell below an objective standard of reasonableness, and must identify counsel's

24 alleged acts or omissions that were not the result of reasonable professional judgment

25 considering the circumstances. Id. at 688; United States v. Quintero-Barraza, 78 F.3d 1344, 1348

26 (9th Cir. 1995).  Judicial scrutiny of counsel's performance is highly deferential.  A court

27

28  [3] Trap and trace devices record the originating telephone numbers of incoming telephone calls.  United States v. Carneiro, 861 F.2d 1171, 1173 fn. 2 (9th Cir. 1988).

4

indulges a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. <u>Strickland</u>, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064 (1984); <u>Sanders v. Ratelle</u>, 21 F.3d 1446, 1456 (9th Cir.1994).

Second, the petitioner must show that counsel's errors were so egregious as to deprive defendant of a fair trial, one whose result is reliable. <u>Strickland</u>, 466 U.S. at 688. The court must also evaluate whether the entire trial was fundamentally unfair or unreliable because of counsel's ineffectiveness.  <u>Id.</u>; <u>Quintero-Barraza</u>, 78 F.3d at 1345; <u>United States v. Palomba</u>, 31 F.3d 1356, 1461 (9th Cir. 1994).  More precisely, petitioner must show that (1) his attorney's performance was unreasonable under prevailing professional norms, and, unless prejudice is presumed, that (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result would have been different.

A court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the petitioner as a result of the alleged deficiencies. <u>Strickland</u>, 466 U.S. 668, 697, 104 S.Ct. 2052, 2074 (1984).  Since it is necessary to prove prejudice, any deficiency that does not result in prejudice must necessarily fail.  Ineffective assistance of counsel claims are analyzed under the "unreasonable application" prong of <u>Williams v. Taylor</u>, 529 U.S. 362 (2000).  <u>Weighall v. Middle</u>, 215 F.3d 1058, 1062 (2000).

The following stipulation was submitted to the jury:

It is hereby stipulated between counsel for the People and counsel for the [Petitioner], that a phone "trap & trace" was placed upon the telephone line of Pearson (661) 823-9548, by the Pacific Bell telephone company.  This "trap & trace" was given a Pacific Bell case number of #2001-07005838.

The "trap & trace" is conducted until the suspected offending telephone number is identified.  Once the suspect telephone number is identified the "trap & trace" is discontinued.

On August 10, 2001, Pacific Bell "trap & trace" #2001-07005838 identified the following incoming phone calls to the line belonging to [Sally] Pearson (661) 823-9548;

1.   at 10:59 incoming call from (559) 782-3384
2.   at 11:14 incoming call from (559) 782-3384
3.   at 11:14 incoming call from (559) 782-3384
4.   at 11:17 incoming call from (559) 782-3384
5.   at 11:17 incoming call from (559) 782-3384
6.   at 11:17 incoming call from (559) 782-3384

1

2
   Thereafter, the suspected offending telephone number was deemed identified and the "trap & trace" was discontinued.

3
The telephone number (559) 782-3384 returned to the following subscriber;

4
   Bill Carol
   970 East River Ave.
   Porterville, California.

5

6
(CT 43; RT 121.)

7
   Counsel's failure to object to the trap and trace evidence did not result in prejudice.  First,

8
as Respondent submits, Petitioner has not, and cannot, meet his burden of establishing a

9
legitimate expectation of privacy in Pearson's telephone records.

10
   "An illegal search or seizure violates the federal constitutional rights only of those who

11
have a legitimate expectation of privacy in the invaded place or seized thing." People v.

12
McPeters, 2 Cal.4th 1148, 1171 (1992), quoting People v. Hernandez, 199 Cal.App.3d 1182,

13
1189 (1988); accord, United States v. Salvucci, 448 U.S. 83, 91-92 (1980); see also Rakas v.

14
Illinois, 439 U.S. 128, 148 (1978).  Additionally, the burden of demonstrating a legitimate

15
expectation of privacy rests with the defendant.  Rawlings v. Kentucky, 448 U.S. 98, 104 (1980);

16
Rakas v. Illinois, 439 U.S., at 148.

17
   Petitioner was legally divorced from Pearson, and he was not residing at her residence.  In

18
addition, as previously stated, the trap and trace device merely recorded the originating telephone

19
numbers of incoming telephone calls.  It did not record any conversations.  See Oliver v. United

20
States, 466 U.S. 170, 176 fn.6, citing Katz v. United States, 389 U.S. 347 (1967) [the protection

21
of the Fourth Amendment encompasses electronic eavesdropping of telephone conversations

22
sought to be kept private].

23
   Further, even if Petitioner had standing to object to the trap and trace evidence,

24
Petitioner's claim is nonetheless without merit.  First, Petitioner has not established that defense

25
counsel's performance was deficient.  A trap and trace device may be legally installed either with

26
a court order or the consent of the subscriber whose telephone is intercepted.  Title 18, U.S.C. §

27
3121, subds. (a) and (b)(3); People v. Suite, 101 Cal.App.3d 680 (1980).  As Respondent

28
submits, nothing in the record indicates a failure to comply with one or both of the

aforementioned prerequisites.  In fact, as Respondent submits the logical inferences from the record indicate the prerequisites were complied with.  Specifically, the fact that counsel was willing to enter into a stipulation regarding the trap and trace evidence indicates a likelihood that the requirements were met.  Additionally, the fact that Pearson reported the threatening calls to the sheriff's department (RT 34), coupled with the fact that the device was placed on her telephone, indicate she consented to it.  (See RT 41, 43 [Pearson testified that she took the precaution of getting a phone trap].)  Thus, there was no basis for defense counsel to object to the use of the trap and trace evidence and therefore reasonably stipulated to its admission.

Second, Petitioner has not established that he suffered any prejudice, and the record does not support the claim.  The trap and trace evidence was useful only to help establish that Petitioner made telephone calls to Pearson's residence on August 10, 2001.[4]  However, Petitioner freely admitted to calling Ms. Pearson several times between July 26, 2001 and August 15, 2001.  (RT 84-85.)  Thus, it cannot be said that the "trap and trace" evidence was prejudicial as it merely corroborated Petitioner's own admission that he did in fact telephone Ms. Pearson's residence.  As previously noted, the "trap and trace" evidence did not record any conversations, it simply listed the incoming telephone number.  As such, it cannot be said that the admission of this evidence resulted in any prejudice to Petitioner.

D.    Trial Court's Abuse of Discretion

Petitioner contends that the trial court abused its discretion when it allowed the trap and trace stipulation to come into evidence at trial.

Generally, the admissibility of evidence is a matter of state law, and is not reviewable in a federal habeas corpus proceeding.  Estelle, 112 S.Ct. at 477; Middleton v. Cupp, 768 F.2d 1083, 1085 (9th Cir.), cert. denied, 478 U.S. 1021 (1985).  Nevertheless, there can be habeas relief for the admission of prejudicial evidence if the admission was fundamentally unfair and resulted in a denial of due process.  Estelle, 112 S.Ct. at 482; Pulley v. Harris, 465 U.S. 37, 41, 104 S.Ct. 871, 874 (1984); Walters v. Maas, 45 F.3d 1355, 1357 (9th Cir. 1995); Jeffries v. Blodgett, 5 F.3d

---

[4] Petitioner admitted to staying at Bill Carol's home and making the phone calls from that location.  (RT 97.)

1180, 1192 (9th Cir. 1993), *cert. denied*, 510 U.S. 1191, 114 S.Ct. 1294 (1994); Gordon v. Duran,

895 F.2d 610, 613 (9th Cir.1990).  However, the failure to comply with state rules of evidence

alone is neither a necessary nor a sufficient basis for granting federal habeas relief on due process

grounds.  Jammal v. Van de Kamp, 926 F.2d 918, 919-920 (9th Cir. 1991).  Only if there are no

permissible inferences that the jury may draw from the evidence can its admission rise to the

level of a due process violation.  Id. at 920.

Here, the admission of the "trap and trace" evidence was not fundamentally unfair

resulting in a denial of due process.  Both counsel reasonably stipulated to the admission of the

"trap and trace" evidence.  First, as noted above, Petitioner does not have standing to challenge

the trap and trace evidence because he does not have a legitimate expectation of privacy in

Pearson's telephone records.  Second, incorrect evidentiary rulings do not provide a basis for

federal habeas corpus relief.  Tinsley v. Borg, 895 F.2d 520, 530 (9th Cir. 1990), *cert. denied*, 498

U.S. 1091 (1991). Further, it cannot be said that the admission of the "trap and trace" evidence

was fundamentally unfair resulting in a denial of due process as it merely corroborated

Petitioner's own admission that he did in fact telephone Ms. Pearson's residence.  As previously

noted, the "trap and trace" evidence did not record any conversations, it simply listed the

incoming telephone number.  As such, it cannot be said that the admission of this evidence

resulted in a due process violation.  Accordingly, Petitioner's claim must be denied.

E.   Ineffective Assistance of Appellate Counsel

Petitioner contends that appellate counsel was ineffective for failing to raise the trap and

trace evidence issue on appeal.

Effective assistance of appellate counsel is guaranteed by the Due Process Clause of the

Fourteenth Amendment.  Evitts v. Lucey, 469 U.S. 387, 391-405 (1985).  Claims of ineffective

assistance of appellate counsel are reviewed according to Strickland 's  two-pronged test.  Miller

v. Keeney, 882 F.2d 1428, 1433 (9th Cir.1989); United States v. Birtle, 792 F.2d 846, 847 (9th

Cir.1986); see also Penson v. Ohio, 488 U.S. 75, 109 S.Ct. 346, 353-54 (1988) (holding that

where a defendant has been actually or constructively denied the assistance of appellate counsel

*///*

altogether, the <u>Strickland</u> standard does not apply and prejudice is presumed; the implication is that <u>Strickland</u> does apply where counsel is present but ineffective).

To prevail, Petitioner must show two things.  First, he must establish that appellate counsel's deficient performance fell below an objective standard of reasonableness under prevailing professional norms.  <u>Strickland v. Washington</u>, 466 U.S. 668, 687-88, 104 S.Ct. 2052, 2064 (1984).  Second, Petitioner must establish that he suffered prejudice in that there was a reasonable probability that, but for counsel's unprofessional errors, he would have prevailed on appeal.  <u>Id</u>. at 694.  A "reasonable probability" is a probability sufficient to undermine confidence in the outcome.  <u>Id</u>.  The relevant inquiry is not what counsel could have done; rather, it is whether the choices made by counsel were reasonable.  <u>Babbitt v. Calderon</u>, 151 F.3d 1170, 1173 (9th Cir.1998).  The presumption of reasonableness is even stronger for appellate counsel because appellate counsel has wider discretion than trial counsel in weeding out weaker issues; doing so is widely recognized as one of the hallmarks of effective appellate assistance.  <u>Miller v. Keeney</u>, 882 F.2d 1428, 1434 (9th Cir.1989).  Appealing every arguable issue would do disservice to the petitioner because it would draw an appellate judge's attention away from stronger issues and reduce appellate counsel's credibility before the appellate court.  <u>Id</u>.  Appellate counsel has no constitutional duty to raise every nonfrivolous issue requested by petitioner . <u>Id</u> at 1434 n. 10 (citing <u>Jones v. Barnes</u>, 463 U.S. 745, 751-54, 103 S.Ct. 3308 (1983)).

In denying Petitioner's appeal on direct review, the Court of Appeal held:

> [Petitioner's] appellate counsel has filed a brief which summarizes the facts, with citations to the record, raises no issues, and asks this court to independently review the record. (*People v. Wende* (1979) 25 Cal.3d 436.) However, in a document filed on July 26, 2002, [Petitioner] raises several issues. We have considered these issues and find that there is no merit to any of them.

(Respondent's Exhibit B, attached to Answer, at 2.)

The state courts' determination of this issue was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent.  Because defense counsel was not deficient and there was no resulting prejudice, Petitioner has failed to demonstrate that, but for

///

counsel's alleged deficiencies, there was a reasonable probability that he would have prevailed on appeal. Petitioner's claim is without merit and must be denied.

RECOMMENDATION

Based on the foregoing, it is HEREBY RECOMMENDED that:

1.     The petition for writ of habeas corpus be DENIED; and

2.     The Clerk of Court be directed to enter judgment in favor of Respondent.

These Findings and Recommendations are submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty (30) days after being served with a copy, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Replies to the objections shall be served and filed within ten (10) court days (plus three days if served by mail) after service of the objections. The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:    May 31, 2005**          _____/s/ Dennis L. Beck_____
3b142a                                    UNITED STATES MAGISTRATE JUDGE